## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 10-B-28565 |
|---|---|---|---|
| DATE | February 9, 2012 | ADVERSARY NO. | |
| CASE TITLE | Jose L. Alvarez and Dawn E. Alvarez, Debtors | | |

**DOCKET ENTRY TEXT**

The objections of creditor Ford Motor Credit Company LLC to Debtor's Motion for Redemption of a 2006 Ford Explorer on the basis of lack of jurisdiction or that the vehicle is not property of the estate are denied. The objection based on the value of the vehicle shall be scheduled for an evidentiary hearing by separate order.

■[ For further details see text below.]

## STATEMENT

The Bankruptcy Code requires debtors to timely file a statement of intent with respect to property serving as collateral for secured debts. One issue in this case is whether the Debtors' failure to file a formal statement of intent within the time prescribed constitutes a valid defense to their motion to redeem collateral. Under the circumstances and for the reasons set forth below, I find that it does not constitute a defense in this case.

I.    **Factual Background**

The Debtors initially filed their case as a Chapter 13 on June 25, 2010, and had a plan confirmed on September 3, 2010. Schedule B, filed with their petition, listed two vehicles: a 2006 Ford Explorer and a 2006 Ford E250. The Debtors listed the Ford Explorer as having 50,000 miles and a value of $17,100, and indicated that it secured a purchase money loan from Ford Motor Credit Corporation ("Ford") with a balance as of the petition date of $21,138. They listed the Ford E250 as having 159,000 miles and a value of $4,850, and indicated that it also secured a purchase money loan from Ford with a balance as of the petition date of $9,734. They also claimed an exemption of $2,400 in each vehicle in Schedule C. The confirmed plan proposed to pay both Ford loans in full through the plan with 5.5% a.p.r. interest.

About a year after confirmation, the Debtors began to default on their scheduled payments to the Chapter 13 Trustee to fund the plan. On August 15, 2011, Ford filed a motion to lift the automatic stay with respect to the Ford Explorer, asserting a default of approximately two months in plan payments. The motion was granted and an order modifying the stay to allow Ford to take possession of or foreclose on the Ford Explorer was entered on September 1, 2011. The Chapter 13 Trustee subsequently filed a motion to dismiss the case for failure to make plan payments, but before that motion could be heard the Debtors voluntarily converted their case to Chapter 7 by filing a notice of conversion on September 27, 2011.

On September 27, 2011, the same date they converted their case, the Debtors filed amended Schedules B and C, deleting the references to the Ford Explorer, but still listing the Ford E250 as an asset and claiming an exemption therein. On the same date, they filed a Chapter 7 Individual Debtor's Statement of Intention, stating their intent to reaffirm their debt on the Ford E250, but making no reference to the Ford Explorer. A Chapter 7 Trustee was assigned and a 341 Meeting of Creditors was scheduled for, and apparently held on, November 7, 2011.

On October 14, 2011, the Debtors filed a motion to redeem the Ford Explorer for $10,920. The Debtors attached a valuation report to their motion to support this value, which was based on the car having 72,500 miles. On October 26, 2011, Ford filed a motion to lift the stay on the Ford E250, and an order lifting the stay with respect to that vehicle was entered on November 10, 2011. The Chapter 7 Trustee filed a no-asset report on November 15, 2011.

On December 6, 2011, Ford filed a response to the motion to redeem the Ford Explorer, arguing (i) that, because the Debtors had failed to timely file a statement of intent, the Ford Explorer ceased to constitute property of the estate 30 days after the Debtors converted to Chapter 7 and the Court had no jurisdiction to hear the motion, (ii) that redemption under Section 722 was not available because the Debtors' amended schedules neither claimed an exemption in the Ford Explorer nor even listed it as property of the estate, and (iii) the valuation report did not constitute admissible evidence and also improperly based the value on the present condition and mileage of the vehicle rather than the value as of the time the petition was filed.

On December 29, 2011, the Debtors filed amended schedules B and C, adding back the Ford Explorer, but listing its value as only $10,920, claiming an exemption of $2,400, and deleting all references to the Ford E250. On the same day, the Debtors filed a Chapter 7 Individual Debtor's Statement of Intention stating an

intent to retain and redeem the Ford Explorer.[1] The Debtors contend that their motion to redeem, which was filed within the 30-day period after they converted to Chapter 7, gave creditors sufficient notice of their intent to satisfy the requirement to file a statement of intent and that, if not, it was appropriate for the Court to extend the time to file the formal statement of intention under the circumstances. They also contend that the failure to list the Ford Explorer in some of their schedules or to initially file a formal statement of intent with respect to that vehicle was a "good faith error," and contend that $10,920, or even as low as $8,650, is a more accurate estimation of the value of the Ford Explorer than was listed in their original schedules.

## II. Discussion
### a. Statutory Framework

Among the duties of an individual debtor who files for relief under Chapter 7 of the Bankruptcy Code is a requirement to file a statement of intent stating what he or she intends to do with any property of the estate that secures a debt. This duty and the consequences of failing to comply are set forth in three sections of the Bankruptcy Code, Section 521(a)(2), Section 521(a)(6) and Section 362(h). Unfortunately, these sections do not fit together perfectly well. See, e.g., In re Molnar, 441 B.R. 108, 111 (Bankr. N.D. Ill. 2010) ("Subsection (a)(6) was added to the Bankruptcy Code as part the BAPCPA Amendments in 2005, and it, and its interplay with (a)(2) and other sections of the Code, have been found confusing."); In re Donald, 343 B.R. 524, 529 (Bankr.E.D.N.C. 2006) ("[d]eciphering this puzzle is like trying to solve a Rubik's Cube that arrived with a manufacturer's defect").

Section 521(a)(2) provides that a debtor shall:

> (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate--
>
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and
>
> (B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;

---

[1] The statement of intent also indicated that the Ford Explorer had 159,000 miles. However, this appears to have been a mistake and part of either the Debtors' or their counsel's ongoing confusion between the two vehicles.

3 of 10

except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

11 U.S.C. §521(a)(2).

Section 521(a)(6) provides that a debtor shall:

(6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor, not later than 45 days after the first meeting of creditors under section 341(a), either--

(A) enters into an agreement with the creditor pursuant to section 524(c) with respect to the claim secured by such property; or

(B) redeems such property from the security interest pursuant to section 722; and ...

If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law, unless the court determines on the motion of the trustee filed before the expiration of such 45-day period, and after notice and a hearing, that such property is of consequential value or benefit to the estate, orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee.

11 U.S.C. §521(a)(6).

Section 362(h) provides that:

(h)(1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)--

(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

(B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's

intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

11 U.S.C. §362(h).

There is significant overlap in these provisions, but there are also significant differences. Sections 521(a)(2) and 362(h) cross-reference each other, but neither section mentions Section 521(a)(6) or is mentioned by it. Section 521(a)(2) applies to all types of property, but the effects of noncompliance set forth in Section 362(h) only apply to personal property, and Section 521(a)(6) only applies to personal property for which the secured debt was for the purchase price.[2] The statutory framework as a whole requires the debtor to do two things: (i) file a statement of intent and (ii) perform that intent. Both Sections 521(a)(2) and 521(a)(6) make reference to performance, but the requirement to file the statement of intent is only mentioned in Section 521(a)(2).

b. **Statement of Intent**

Section 521(a)(2)(A) requires a statement of intent to be filed within 30 days after the petition, and only gives the court power to extend the deadline within that period. There is an official national form for a chapter 7 individual debtor's statement of intent, Form B-8, and as stated in Fed. R. Bankr. P. 9009, the "Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate." The Debtors in this case eventually filed a statement of intent to redeem the Ford Explorer using the prescribed form, on December 29, 2011, but that was not within 30 days of converting to Chapter 7.[3] They did file a motion to redeem within such 30-day period, however. Other courts have found that a motion to redeem can constitute an amendment to a statement of intent. See, e.g., Baer v. HSBC Auto (In re Baer), 2011 WL 1832490 (Bankr. E.D. Ky. May 12, 2011) ("This motion to redeem and subsequent order granting the motion amended his original Statement of Intention within the time period prescribed"); In re Kidwell, No. 06-14087, 2007 WL 2934866 (Bankr. E.D. Tenn. Oct. 4, 2007) ("In filing a motion to redeem on July 23, the debtor effectively amended his original intent to reaffirm the property by expressing a new intent to redeem the

---

[2] As noted in In re Molnar, there is also significant disagreement in the case law as to the meaning of the terms "allowed claim" and "purchase price" as used in Section 523(a)(6). 441 B.R. at 111-12. That is not an issue here, in part because in this case Ford filed a proof of claim, and because the Debtors admitted in their schedules that the loan was for the purchase money.

[3] Bankruptcy Rule 1019, dealing with conversion of cases to Chapter 7, provides that if "a statement of intention is required, it shall be filed within 30 days after entry of the order of conversion or before the first date set for the meeting of creditors, whichever is earlier." Fed. R. Bankr. P. 1019(1)(b). The reference to the meeting of creditors can only possibly refer to the post-conversion meeting.

property in accordance with § 722."). A motion to redeem can also constitute an initial statement of intent. Even if it was not the most appropriate way to fulfill the duty set forth in Section 521(a)(2)(A), it did satisfy the requirements of that section. The Debtors' motion to redeem was filed with the Clerk, it was filed within the period set forth in Section 521(a)(2)(A) and it stated the Debtors' intent to retain and redeem the Ford Explorer, and that the vehicle had been claimed as exempt. It is true that the Debtors did not comply with Rule 9009 by using the official form, and that use of that form is mandatory. However, the Debtors did subsequently correct their error by filing the proper form, the failure to file a statement using the official form contemporaneously with their motion to redeem appears to have been a good faith mistake, and Ford has not alleged that it suffered any prejudice. Not only did Ford receive of all information that would have been conveyed by the formal statement of intent through the motion to redeem, but Ford had already been granted relief from the stay by the order entered in September 2011 I therefore find that the Debtors have complied with Section 521(a)(2)(A) with respect to the Ford Explorer.[4]

### c. **Performance**

Both Sections 521(a)(2) and 521(a)(6) require a debtor to surrender, reaffirm or redeem collateral, but Section 521(a)(2) requires the debtor to act within 30 days after the date first set for a 341 meeting, while Section 521(a)(6) requires performance within 45 days after the date the 341 meeting is actually held, which might be later than the date first set. See In re Molnar, 441 B.R. at 111. It is difficult to reconcile the two time-frames because "the same stay obviously cannot terminate twice, and there is no provision to reinstate the stay after thirty days and before forty-five days." Id., 441 B.R. at 112. Therefore, if both time-frames apply to the same required actions, the longer time-frame in Section 521(a)(6) would be irrelevant. Id.

Some courts have held that only one section or the other applies, with Section 521(a)(6) essentially pre-empting Section 521(a)(2) with respect to purchase-money security interests. See, e.g., In re Donald, 343 B.R. 524, 535 n.5 (Bankr. E.D.N.C. 2006) ("Section 521(a)(6) has a much more limited application than § 521(a)(2), and if § 521(a)(6) is applicable and if there is a conflict between the two time limits, the 45–day time limit of § 521(a)(6) should control."). But, normally purchase-money security interest holders have been given preferred treatment by the Code, so it seems very odd that the amendment would give such creditors worse treatment by giving them a longer waiting period before their remedies than other creditors.

Another view is to focus on the different language used in the two subsections and to conclude that the time-periods refer to different required acts. Under this view, Section 523(a)(2) – which states that the debtor must "perform his intention" – only requires that the debtor take preliminary acts towards reaffirming the debt or redeeming or surrendering the collateral, while Section 523(a)(6) requires that the reaffirmation, redemption or surrender be fully consummated within the 45 days. However, the language at the end of Section 521(a)(6) which removes the property from the estate only applies "[i]f the debtor fails to so act." It is therefore conditioned, like Section 521(a)(2), on the acts of the debtor, not acts outside his control. Moreover, a debtor cannot unilaterally reaffirm a debt or redeem collateral, at least not without a court order which would require

---

[4] In a similar vein, there is also a prescribed form for proofs of claim, but courts have developed an "informal proof-of-claim doctrine", which "is an equitable doctrine that permits bankruptcy courts to treat a creditor's late formal claim as an amendment to a timely informal claim." In re marchFIRST, Inc., 573 F.3d 414, 418 (7th Cir. 2009).

notice and a hearing. As commentators have noted, because the redemption provision in Section 722 requires the debtor to have an exemption in the property and because of the time the Bankruptcy Code grants creditors to object to exemptions and other provisions in the Code, in many instances it may be impossible for a debtor to redeem property within 45 days. 4 Norton Bankr. L. & Prac. 3d §81:12 ("[T]he debtor would be unable to redeem property in many circumstances following strict adhesion to the timing rules."); see also Arizona Fed. Cred. Union v. DeSalvo (In re DeSalvo), No. 09-21056, 2009 WL 5322428 (Bankr. S.D. Ga. Nov. 16, 2009) ("Even if a debtor timely files a motion to redeem, there is no guarantee that the court will schedule a hearing within the 45–day period. Thus, debtors could be prevented from completing redemption within that time period through no fault of their own."). Therefore, if courts were to accept this reading of the statute, bad faith creditors would be rewarded for stalling indefinitely even though good faith debtors were making every effort to perform their stated intention to redeem or reaffirm. Section 362(h)(1)(B) has some protection from such abuse by denying the remedies where a creditor will not even agree to reaffirmation on the original contractual terms. But Section 521(a)(6) has no such limitation or protection from abuse.

A third view is to emphasize that Section 521(a)(6) is primarily designed to prohibit debtors from maintaining possession of collateral. Section 521(a) sets forth the debtor's "duties", and the duty set forth in subsection (a)(6) is to "not retain possession" of collateral in the circumstances enumerated. Under this view, Section 521(a)(6) was intended to transfer possession of collateral from debtors to purchase money lenders during the pendency of court proceedings or negotiations that took more than 45 days. In other words, if a debtor was attempting to redeem or reaffirm but the process took longer than the 45-day period, the creditor would get possession of the collateral until the process was complete. But, Section 521(a)(6) does more than state the debtor's duty. It also sets forth conditions under which the stay will lift and the property will be removed from the estate, and that portion of the section is not tied to maintenance of possession. The part of Section 521(a)(6) that lifts the stay and removes the property from the estate applies if "the debtor fails to so act [(to enter into an agreement or to redeem such property)] within the 45-day period." Thus, while Section 521(a)(6) generally prohibits the Debtor from maintaining possession of collateral, the consequences at the end of the subsection are tied to failure to redeem or reaffirm, not to failure to surrender possession of the property. Additionally, as noted above, this view, too, would allow bad faith creditors to obtain possession of collateral by stalling and encourage bad behavior rather than cooperation.

A fourth view is that Section 521(a)(6) was simply designed to overrule, at least with respect to purchase money security interests, case law that had held that debtors had a "ride-through option" to simply retain collateral and continue making payments without reaffirming the debt. See, e.g., In re Jones, 591 F.3d 308 (4th Cir. 2010) ("Section 521(a)(6), added by BAPCPA, also evidences that the ride-through option has been eliminated"); In re Donald, 343 B.R. 524, 534 (Bankr. E.D.N.C. 2006) ("Unlike the BAPCPA amendments to § 521(a)(2) and § 362(h), which do not by themselves eliminate the 'ride-through' option, the amendment to § 521(a)(6) made by BAPCPA does."). But, that would not explain why Section 521(a)(6) used a different timeframe than Section 521(a)(2). Also, the changes made to Section 521(a)(2) and Section 362(h) already seem to have addressed that issue, so it is unclear why Section 521(a)(6) would be needed. See, e.g., In re Harris, 421 B.R. 597, 599 (Bankr. S.D. Ga. 2010) ("BAPCPA added 11 U.S.C. § 521(a)(6) and § 362(h) which clearly eliminated the 'ride through' for personal property.") (emphasis added).

Although there is no perfect explanation of what Congress intended these sections to mean or how they were intended to interact, I tend to believe Section 521(a)(6) is primarily intended to simply create an affirmative duty for a debtor to surrender collateral covered by the provision after the 45-day period is over unless he has taken steps to reaffirm the debt or redeem the collateral by that point.[5] I think it is also intended to emphasize that there is no "ride-through option" with respect to such collateral. But, I cannot believe that it was intended to require the full consummation of redemption or reaffirmation within the 45-day period or to require surrender of the collateral if such redemption or reaffirmation has not occurred. I need not rule on whether the 45-day period 'pre-empts' the 30-day period for purchase-money collateral or if the end of Section 521(a)(6) is simply redundant, since here all relevant acts were performed even within the shorter period.

I find that the Debtors have complied with the 'performance' requirement of both Section 521(a)(2) and Section 521(a)(6) by filing the motion to redeem. Courts have held that the requirement in Section 521(a)(2) for a debtor to "perform his intention" requires only acts within the debtor's control, such as filing a motion or making a request to the creditor. See, e.g., In re Perez, 2010 WL 2737187 (Bankr. D.N.M. July 12, 2010) ("It would not make sense to construe this language to impose a 'duty' on every chapter 7 debtor wishing to reaffirm a debt to render a performance that is outside the power or control of a debtor."). Courts have also held that the filing of a motion to redeem satisfies this duty. See, e.g., In re Molnar, 441 B.R. at 113-14 (finding that "filing a motion to redeem or a reaffirmation agreement" was the clearest way to 'perform', but that repeated attempts to discuss terms of redemption with creditor could also satisfy the requirement). Even if Section 521(a)(6) requires greater acts than Section 521(a)(2), filing a motion to redeem has been held to satisfy that section. See, e.g., In re DeSalvo, 2009 WL 5322428 (Bankr. S.D. Ga. Nov. 16, 2009) (finding that the filing of a motion to redeem "was a sufficient 'act' under" Section 521(a)(6)). Therefore, the Debtors have complied with both Sections 521(a)(2) and 521(a)(6), and so the Ford Explorer remains property of the estate (except to the extent exempted by the Debtors' claim of exemption or abandoned by the trustee).

### d. Right to Redeem and Jurisdiction

Finally, even if the Debtors had failed to comply with Sections 521(a)(2) or 521(a)(6), that would not mean that they had lost their right to redeem under Section 722. As noted in In re Herrera, "the Code contains no language that terminates a debtor's right to redeem under § 722 upon the failure to do so within the time limits set forth in §521(a)(2)(A) and (B)." 454 B.R. 559, 565 (Bankr. E.D.N.Y. 2011); see also, In re Militante, No. 08-45077-TK, 2009 WL 779798 (Bankr. N.D. Cal. Feb. 6, 2009) ("[T]he debtor's right to redeem personal property by paying the value of the secured claim does not terminate when the automatic stay terminates and does not require that the personal property to be redeemed be property of the bankruptcy estate. To the contrary, the right of redemption requires that the personal property either be exempted from or abandoned by the estate."). Moreover, Section 521(a)(2) contains an express proviso stating that "nothing in subparagraphs (A)

---

[5] I note, however, that numerous courts have suggested that the Bankruptcy Code provides no mechanism to enforce such duty. See, e.g., In re White, 2011 WL 4368390 (Bankr. D. Col. Sept. 19, 2011) (courts have uniformly held that [Section 521(a)(6)'s] indication that the debtor not retain possession of [the collateral] does not create a right in the creditor to a turnover order.") (internal citation omitted; In re Jones, 397 B.R. 775, 790 (S.D. W. Va. 2008) ("The bankruptcy court is not itself empowered by the code to order turnover of the vehicle."). Ford has not sought such an order, and therefore the Court need not make any ruling on the issue.

and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h)." Id.; 11 U.S.C. § 521(a)(2). Thus, a failure to comply with Sections 521(a)(2) or 521(a)(6) may lift the stay to allow the creditor to use state law remedies to repossess the collateral, and by removing it from the estate may prevent the trustee from asserting any interest in it. But, even if Section 521(a)(6) were read strictly to terminate the debtor's right to *possess* the collateral, it would not terminate his right to redeem the property under Section 722 or deprive a bankruptcy court of jurisdiction to hear such a motion. The jurisdiction of this Court is not limited solely to *in rem* jurisdiction of assets of a bankruptcy debtor's estate. Rather, jurisdiction is granted by 28 U.S.C. § 1334, which provides jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." A motion to redeem property under Section 722 of title 11 arises under title 11. Core proceedings in bankruptcy include not only proceedings "affecting the liquidation of assets of the estate" but also those affecting "the adjustment of the debtor-creditor ... relationship." 28 U.S.C. §157(b)(2)(O). Thus, the Debtors clearly had a right to bring their motion to redeem, and this Court clearly has jurisdiction to hear the motion.

### e. **Requirements of Section 722**

Section 722 provides that an "individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption." Ford argued in its December 6th response that the Debtors could not comply with Section 722 because they had not claimed an exemption in the Ford Explorer. That was true at the time, but the Debtors subsequently filed amended schedules on December 29, 2011, claiming an exemption. Rule 4003(b) gives creditors 30 days after amended schedules to file an objection to a claim of exemptions. Fed. R. Bankr. P. 4003(b). That 30-day period has passed, and no creditors filed any objection or motion to extend, and therefore Ford cannot contest the validity of that claim of exemption. Taylor v. Freeland & Kronz, 503 U.S. 638, 644 (1992).

However, the parties dispute the value of the Ford Explorer, and dispute whether the vehicle was intended primarily for personal, family, or household use. Those are factual issues, which will require an evidentiary hearing.[6]

---

[6] The parties disagreed as to the proper date of valuation and I make no finding as of this time whether the second sentence of Section 506(a)(2) requires the valuation to be as of the date of the petition or as of the date of the hearing on the motion to redeem. Instead, I will address that issue at the time I rule on the valuation issue. The parties may present supporting case law on the issue at or before the evidentiary hearing.

### III.    Conclusion

Therefore, the objections of Ford to the Debtors' motion to redeem the Ford Explorer on the basis of lack of jurisdiction or that the vehicle is not property of the estate are denied. The objection based on the value of the vehicle shall be scheduled for an evidentiary hearing by separate order.

February 9, 2012

_____
Judge Manuel Barbosa